CLINGER

FILED
2010 NOV 22 AM 9 17
BRENDA DESHIELDS
CLERK AND RECORDER
BENTON COUNTY, AR

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

JUERGEN LOTTMANN PLAINTIFF

VS. CASE NO. CIV 2010-3480-2

UNITEDHEALTHCARE, INC., AND
UNITEDHEALTHCARE INSURANCE COMPANY DEFENDANTS

## COMPLAINT

For his Complaint against the Defendants, the Plaintiff states:

1. This Court has jurisdiction over the parties and subject matter, and venue is proper in this Court. The Plaintiff is a citizen and resident of the State of Arkansas residing in Benton County, Arkansas. The Defendants are foreign corporations in the business of selling insurance policies in the State of Arkansas.
2. The Plaintiff is a licensed insurance agent in Arkansas. He is licensed to sell health insurance to large groups.
3. On or about August, 2010, the Plaintiff reaffirmed an "Agent/Agency Agreement" with the Defendants (collectively UHC), a copy of which is attached hereto as "Exhibit 1" and incorporated by reference as though set forth fully, word for word.
4. Under Section 2.14 of the Agreement, UHC policies are an enforceable part of the Agency Agreement.
5. One of UHC's policies concerned quoting coverage for a "key account." A "key account" was any account where a proposed insured employed more than 100 employees. UHC's policy was that they would only quote insurance to the first agent that submitted a

complete quote for insurance to UHC (see Defendant's email dated September 21, 2010 attached hereto as "Exhibit 2").

6. On September 21, 2010, the Plaintiff submitted a complete request for quote to UHC for a key account, Fellowship Bible Church, which employed more than 100 employees (See "Exhibit 3." Under Admin Rule 19, the entire quote is not included as it contains potentially confidential identifying information). The Plaintiff was the first and only agent to submit a complete quote for insurance on Fellowship Bible Church.

7. After submitting his request for quote on Fellowship Bible Church, the Plaintiff received an email reply from UHC employee Mike Styduhar that stated "I hate to tell you this, but . . . another broker beat you to the punch sending the RFP and all data." See "Exhibit 2" attached hereto. This statement was untrue. The Plaintiff later discovered that this other agent, Todd Setzer, did not submit a complete quote. Both Todd Setzer and the CFO of Fellowship Bible Church later confirmed that a complete quote was not sent in per UHC policy. Further, Fellowship Bible Church did not authorize this Setzer or any person other than the Plaintiff to submit a quote for insurance to UHC (See "Exhibit 4").

8. When the Plaintiff confronted UHC with the facts, rather than issue a quote per UHC policy, or making any other good faith attempt to resolve the dispute as required by Section 6 of the Agency Agreement, UHC sent a letter terminating the Plaintiff's agreement "per Section 5.2" of the Agency Agreement (see "Exhibit 5" attached hereto). Section 5.2 requires UHC give the Plaintiff 60 days notice prior to termination. The letter terminated the Agency Agreement effective December 15, 2010.

9. In addition, and in contradiction, UHC immediately terminated his authority to sell UHC products under Section 5.10. UHC's interpretation of Section 5.10 contradicts the 60 day

notice to terminate under Section 5.2. This did not give the Plaintiff the 60 day notice of termination required by Section 5.2.

10. After terminating his Agency Agreement, UHC refused to process the quotes already submitted to UHC prior to termination of the Agency Agreement. The Plaintiff had two quotes pending in addition to the quote submitted for Fellowship Bible Church. Those other two quotes were Christian Life Cathedral and Powerhouse Seafood & Grill.

11. UHC has breached its Agency Agreement by:

   a. Failing to follow its policy and quote insurance on the Fellowship Bible Church;

   b. Failing to submit quotes to the Plaintiff on Christian Life Cathedral and Powerhouse Seafood & Grill;

   c. Failing to give the required 60 day notice of termination and in fact terminating his Agency Agreement on October 4, 2010 (See Exhibit 6) and failing to make a good faith attempt to resolve a dispute prior to termination as required by Section 6 of the Agency Agreement. The only reason UHC terminated the Agency Agreement was the dispute over the Fellowship Bible Church quote. Section 6.1 of the Agency Agreement required the parties to send written notice of their dispute and negotiate in "good faith" prior to termination of the Agency Agreement. The written notice requirement was satisfied by the various emails exchanged; however, rather than negotiate in good faith for 90 days, UHC simply terminated the Agency Agreement in violation of Section 6.1 of the Agency Agreement.

12. UHC has at all times acted in bad-faith in breaching in its refusal to act in accordance with the terms of its Agency Agreement with the Plaintiff. The terms of that Agency Agreement establish a duty to act in good faith and in accordance with the policies

established by UHC. UHC acted in bad-faith by refusing to quote a key account and lying about the reasons why it wouldn't quote the account. When confronted with the lie, UHC continued to act in bad-faith by terminating its Agency Agreement, without making any good-faith attempt to resolve the dispute as required by Section 6 and by terminating the Agreement as of October 4, 2010, which is in complete disregard of the 60 days notice required by Section 5.2, and by refusing to quote requests for quotes of insurance submitted before the termination of the Agency Agreement.

13. The Plaintiff has suffered damages as a result of UHC breach of contract and acts of bad-faith.

14. The Plaintiff lost revenue which would have been derived from the commissions earned on policies had they been quoted.

15. The Plaintiff is entitled to an award of punitive damages for the Defendant's acts of bad faith.

16. The Plaintiff requests a trial by jury.

WHEREFORE, the Plaintiff prays for judgment against the Defendant for his compensatory damages in an amount to be determined by a jury by an amount which exceeds the minimum for Federal Court diversity jurisdiction and for all other relief to which he may prove himself entitled.

Respectfully Submitted
For the Plaintiff

By: ______________________

Chris Lisle, AR Bar #93011
Lisle Rutledge, PA
1458 Plaza Place
Springdale, AR 72764
(479) 750-4444 Phone
(479) 751-6792 FAX

UnitedHealthcare

EXHIBIT
1

# Agent/Agency Agreement

## Introduction

**Parties; Scope.** This Agent/Agency Agreement ("Agreement") between UnitedHealthcare, Inc., United HealthCare Insurance Company and any entity controlled by or under common control therewith (collectively, "UnitedHealthcare") and ______________________________________________("Agent") sets forth the terms and conditions under which Agent may sell health coverage by UnitedHealthcare, as well as ancillary, non-medical coverage (for example, life, disability, vision, and dental coverage) sold in conjunction therewith or on a stand-alone basis.

**Effective Date.** This Agreement is effective as of the date it is signed by both parties, as noted on the signature page hereto ("Effective Date"), and replaces and supersedes any prior agreement between the parties regarding the solicitation and sale of UnitedHealthcare's Benefit Plans (other than the solicitation and sale of Benefit Plans by UnitedHealthcare's Specialized Care Services and Ovations businesses) and any compensation payable with respect thereto.

## Section 1: Definitions

1.1 **Agent** means the person or entity licensed and appointed by UnitedHealthcare to solicit an Enrolling Unit to purchase a Benefit Plan and who is a party to this Agreement.

1.2 **Agent of Record** means a legally eligible person or entity designated by an Enrolling Unit to serve as its insurance agent, broker or producer and that UnitedHealthcare may compensate under the terms of this Agreement.

1.3 **Benefit Plan** means a health coverage product (e.g., a health insurance or HMO policy) and/or ancillary product (e.g., a life insurance policy) that UnitedHealthcare has authorized to be sold to an Enrolling Unit.

1.4 **Enrolling Unit** means an entity with which UnitedHealthcare has a contract to provide individual or group coverage under a Benefit Plan.

1.5 **Governmental Entity** shall include, but be not limited to, villages, townships, cities, counties, public school districts and similar tax supported entities.

## Section 2: Rights and Responsibilities

2.1 **Solicitation of Enrolling Units.** UnitedHealthcare authorizes Agent to sell UnitedHealthcare's Benefit Plans under the terms of this Agreement. Agent agrees to solicit prospective Enrolling Units to enroll in one or more Benefit Plans from UnitedHealthcare. In making these solicitations, Agent will comply with the following terms and conditions:

(a) **Proposals.** Any proposal Agent gives to a prospective Enrolling Unit must accurately reflect UnitedHealthcare's terms of coverage, including but not limited to benefits and premiums, and must not be misleading.

(b) **Terms may not be changed without UnitedHealthcare's approval.** Agent may not alter any term of a proposal except with UnitedHealthcare's prior written approval.

(c) **Application information.** Agent must accurately and completely record and submit to UnitedHealthcare all information that UnitedHealthcare requires in order to enroll Enrolling Units under a Benefit Plan.

(d) **Marketing materials.** If Agent uses any material not provided or approved by UnitedHealthcare, the material must be accurate and not misleading. Agent must promptly return all marketing and enrollment materials provided by UnitedHealthcare to UnitedHealthcare when this Agreement terminates, or sooner upon UnitedHealthcare's request. Any marketing materials proposed for use by Agent but not provided or previously approved by UnitedHealthcare are subject to prior approval by UnitedHealthcare.

2.2 **Licensing.** Agent must possess and maintain every license required by law to perform services under this Agreement, including in every state in which Agent conducts business under this Agreement. Agent must provide proof of licensure to UnitedHealthcare upon UnitedHealthcare's request. Agent must immediately notify UnitedHealthcare of any expiration, termination, revocation, suspension or any other action by a Department of Insurance or any other governmental agency affecting licenses required to perform services under this Agreement. In states that issue renewal licenses Agent, must furnish UnitedHealthcare with a copy of Agent's renewal license.

2.3 **Appointment.** UnitedHealthcare, in its sole discretion, will appoint Agent to solicit prospective Enrolling Units to purchase Benefit Plans from UnitedHealthcare. Subject to applicable law, UnitedHealthcare may terminate any of Agent's appointments at any time without terminating this Agreement in its entirety.

2.4 **Training.** Agent must successfully complete any training UnitedHealthcare requires within 6 months after being notified by UnitedHealthcare that such training is required.

2.5 **Acceptance for Enrollment.** Agent acknowledges that only UnitedHealthcare, and not Agent or any other person, may accept or reject for enrollment a prospective Enrolling Unit. Agent further acknowledges that no Enrolling Unit is eligible to receive coverage under a Benefit Plan unless and until UnitedHealthcare accepts and enrolls the Enrolling Unit and that only UnitedHealthcare, and not Agent or any other person, has the right to determine the effective date of coverage.

## Agent/Agency Agreement

2.6 **Servicing of Enrolling Units.** Agent must assist Enrolling Units in enrolling, maintaining, and renewing coverage under any applicable Benefit Plan as reasonably required by UnitedHealthcare and/or the Enrolling Unit.

2.7 **No Combining of Businesses for Purposes of Maximizing Bonuses or Rewards.** Agent agrees that it will not create partnerships, arrange assignments, or use other devices as a means of combining business for the purpose of maximizing any bonus payment or other reward from UnitedHealthcare. This provision does not entitle Agent to receive any bonus payment(s) or reward(s) from UnitedHealthcare if Agent is not otherwise eligible to receive any such bonus payment(s) or reward(s).

2.8 **Extent and Limitation of Agent's Authority.** Agent has no authority to act on UnitedHealthcare's behalf except as expressly provided in this Agreement. Without limiting the forgoing, Agent must not represent by word or deed that Agent has authority to (i) bind coverage; (ii) accept an applicant for coverage under a Benefit Plan; (iii) misrepresent or omit material facts in an application; (iv) collect any premium, except for the first month's premium; (v) modify or waive any Benefit Plan or any Benefit Plan's term regarding enrollment, coverage, or benefits; (vi) distribute any advertisement, circular, or promotional literature that is inaccurate, misleading, or that UnitedHealthcare has disapproved; (vii) sell any Benefit Plan or other product not expressly authorized by this Agreement; or (viii) do any other thing, on behalf of UnitedHealthcare, not expressly permitted by this Agreement.

2.9 **Books and Records; Audit.**

(a) **Adequate records required.** Agent must maintain adequate books and records in accordance with applicable law and standards within the health care insurance industry.

(b) **UnitedHealthcare may audit Agent's records.** Agent agrees to permit UnitedHealthcare to inspect and audit all information and records related to services Agent performs for UnitedHealthcare under this Agreement. UnitedHealthcare must give Agent reasonable notice and conduct the inspection and audit during regular business hours.

2.10 **Protection of Private Information.** Agent understands and acknowledges that, while performing services under this Agreement, Agent may receive from UnitedHealthcare, or create or receive on behalf of UnitedHealthcare, certain information that is defined as "Protected Health Information" ("PHI") under the privacy regulations issued under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or "nonpublic personal information" under the Gramm-Leach-Bliley Act and implementing regulations ("GLB"), or both.

To the extent Agent provides services or assistance to UnitedHealthcare and requires access to PHI in order to perform such services or act on behalf of UnitedHealthcare, Agent shall be considered a Business Associate of UnitedHealthcare and Agent shall agree to the terms of subsections (a) through (i) of Section 2.10 of this Agreement regarding Agent's use and disclosure of this information. To the extent Agent is not acting on behalf of or at the direction of UnitedHealthcare, Agent shall not be considered a Business Associate of UnitedHealthcare.

Regardless of whether Agent is considered a Business Associate of UnitedHealthcare, Agent agrees that it will use or disclose PHI it receives from, or is created or received on behalf of, UnitedHealthcare and nonpublic personal information ("Personal Information") received from or created or received on behalf of UnitedHealthcare, only to the extent to which HIPAA, GLB or other federal or state privacy laws applicable to UnitedHealthcare would permit UnitedHealthcare to use or disclose the information.

Agent acknowledges that being considered a Business Associate of UnitedHealthcare does not automatically entitle Agent to access certain PHI and Personal Information and that UnitedHealthcare may deny broker access to PHI and Personal Information or condition such access on Agent meeting certain requirements, at UnitedHealthcare's discretion.

(a) With regard to its use or disclosure of PHI or Personal Information, Agent agrees, represents and warrants to UnitedHealthcare that Agent will:

(1) not use or further disclose any PHI or Personal Information, except as permitted by this Agreement or as Required By Law;

(2) maintain and use appropriate safeguards at all times to prevent PHI or Personal Information from being used or disclosed, except as permitted by this Agreement or Required By Law; and

(3) ensure that any subcontractor or agent to whom Agent provides any PHI or Personal Information agrees, in writing, to abide by the same conditions and restrictions with regard to the PHI or Personal Information that apply to Agent, including, without limitation, all of the requirements of this Section 2.10, subsections (a) through (i).

(b) With regard to its use or disclosure of PHI, Agent hereby agrees, represents and warrants to UnitedHealthcare that Agent will, in the time and manner designated by UnitedHealthcare:

(1) report promptly to UnitedHealthcare if Agent becomes aware of any use or disclosure of any PHI that is not permitted by this Agreement;

(2) mitigate, to the extent practicable, any harmful effect caused by Agent's violation of the terms of this Agreement;

(3) make available to UnitedHealthcare (or to an Individual, if directed to do so by UnitedHealthcare) PHI in a Designated Record Set, so that UnitedHealthcare may respond to an Individual's Request For Access to information about the Individual in accord with the HIPAA privacy regulation;

(4) Amend or correct PHI in a Designated Record Set in accord with the HIPAA privacy regulation;

(5) document disclosures of PHI and information related to disclosures by Agent that will permit for UnitedHealthcare to respond to a request from an Individual for an Accounting of Disclosures of PHI in accord with the HIPAA privacy regulations;

## Agent/Agency Agreement

(6) make available to UnitedHealthcare (or to an Individual, if directed to do so by UnitedHealthcare) the information documented under subsection (b)(5) above, that would permit UnitedHealthcare to respond to a request from an Individual for an Accounting of Disclosures, in accordance with the HIPAA privacy regulations; and

(7) make its internal practices, books and records relating to the use and disclosure of PHI available to UnitedHealthcare and the Secretary of Health and Human Services ("the Secretary") for purposes of determining UnitedHealthcare's compliance with the HIPAA privacy regulations. Information provided under this subsection must be provided in the time and manner designated by the Secretary, as well as in the time and manner designated by UnitedHealthcare.

(c) With regard to its use and/or disclosure of electronic protected health information ("EPHI"), as such term is defined by the Security Standards published on February 20, 2003 at 68 Fed. Reg. 8334 *et seq.* (45 C.F.R. Parts 160, 162 and 164) as hereafter amended ("HIPAA Security Rule"), Agent shall:

(1) Implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the EPHI that Agent creates, receives, maintains or transmits on behalf of UnitedHealthcare;

(2) Ensure that any and all of our subcontractors or agents to whom Agent provides EPHI agrees, in writing, to implement reasonable and appropriate safeguards to protect such EPHI; and

(3) Report to UnitedHealthcare any Security Incident (as defined in 45 CFR Section 164.304) relating to EPHI of which Agent become aware, in accordance with its standard reporting procedures.

(d) From and after the compliance date applicable to UnitedHealthcare with respect to the Standards for Electronic Transactions and Code Sets promulgated at 45 CFR parts 160 and 162 (EDI Rules), Agent will take all steps necessary and appropriate to ensure that Agent complies with the applicable provisions of the EDI Rules.

(e) Each term and condition of this Section 2.10 that is required by HIPAA or GLB is effective on the date the applicable HIPAA regulations and/or GLB apply to UnitedHealthcare or this Agreement, respectively.

(f) When this Agreement terminates, regardless of the reason, Agent must return to UnitedHealthcare or destroy all PHI and Personal Information, and retain no copies in any form whatsoever. This provision applies to PHI and/or Personal Information that is in the possession of subcontractors, vendors or agents of Agent.

(g) Unless otherwise specified in this Agreement, all capitalized terms in this Agreement not otherwise defined have the meaning established by HIPAA, as amended from time to time.

(h) UnitedHealthcare and Agent agree to take such action as is necessary to amend this Agreement from time to time as is necessary for UnitedHealthcare to comply with the requirements of HIPAA, the HIPAA privacy regulations, HIPAA Security Rule, GLB and other federal and state privacy and consumer rights laws and regulations applicable to UnitedHealthcare. Agent agrees to cooperate with and assist UnitedHealthcare in order for UnitedHealthcare to meet its obligations under applicable privacy laws and regulations.

(i) This Section 2.10 survives termination of this Agreement.

(j) The terms and conditions of this section required by HIPAA shall be construed in light of any applicable interpretation of or guidance on the HIPAA privacy regulation or Security Rule issued by the Secretary from time to time. Any ambiguity in this Section 2.10 shall be resolved in favor of a meaning that permits UnitedHealthcare to comply with applicable laws and regulations.

(k) ARRA

(1) **Definitions.** All capitalized terms used in this section not otherwise defined in this Agreement have the meanings established for purposes of the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations (collectively, "HIPAA") and ARRA, as each is amended from time to time. "**Breach**" shall mean the acquisition, access, use or disclosure of PHI in a manner not permitted by the Privacy Rule that compromises the security or privacy of the PHI as defined, and subject to the exceptions set forth, in 45 C.F.R. 164.402. "**Compliance Date**" shall mean, in each case, the date by which compliance is required under ARRA and/or its implementing regulations, as applicable; provided that, in any case for which that date occurs prior to the Effective Date of this Agreement, the Compliance Date shall mean the Effective Date of this Agreement. "**Affiliate**", for purposes of this section, shall mean any entity that is a subsidiary of UnitedHealth Group. "**Services**" shall mean, to the extent and only to the extent they involve the creation, use or disclosure of PHI, the services provided by Agent, acting as a Business Associate, to UnitedHealthcare, in its role as a Covered Entity, under the Agreement, as amended by written agreement of the Parties from time to time. All references in this section to ARRA shall be deemed to include all associated implementing regulations, when and as each is effective.

(2) **Agent's Obligations.** With regard to its use and/or disclosure of PHI, as of the respective Compliance Date of each referenced obligation, Agent agrees to: (a) comply with the HIPAA Security Rule requirements in accordance with 42 U.S.C. § 17931; (b)without unreasonable delay, and in any event on or before 48 hours after its Discovery by Agent, notify UnitedHealthcare of any incident that involves an unauthorized acquisition, access, use, or disclosure of PHI, even if Agent believes the incident will not rise to the level of a Breach, including in the notification, to the extent possible, and supplement the notification on an ongoing basis with: (i) the identification of all individuals whose Unsecured PHI was or is believed to have been involved, (ii) all other information reasonably requested by UnitedHealthcare to enable UnitedHealthcare to perform and document a risk assessment in accordance with 45 C.F.R. Part 164 subpart D with respect to the incident to determine whether a Breach of Unsecured PHI occurred, and (iii) all other information reasonably necessary to provide notice to individuals, HHS and/or the media, all in accordance with the data breach notification requirements set forth in 42 U.S.C. § 17932 and 45 C.F.R. Parts 160 & 164 subparts A, D, & E as of their respective Compliance Dates. Notwithstanding the foregoing, in UnitedHealthcare's sole discretion and in accordance with its directions, Agent shall conduct, or pay the costs of conducting, an investigation of any incident required to be reported under this Section 2(b) and shall provide and/or pay the costs of providing, the required notices as set forth in this Section 2(b); (c) request, use and/or disclose only the minimum amount of PHI necessary to accomplish the permitted purpose of the request, use or disclosure; provided, that Agent shall comply with 42 U.S.C. § 17935(b); and (d) comply in all respects with all its other obligations in accordance with ARRA, including without limitation, 42 U.S.C. §§ 17934(b),17935(c), (d) & (e), and 17936(a) & (b).

## Agent/Agency Agreement

**2.11 Insurance and Indemnification.**

**(a) Insurance.** Agent must maintain general liability, professional liability, and errors and omissions insurance or bonds in amounts and in forms standard and adequate for Agent's business and agreeable to UnitedHealthcare. Agent must provide UnitedHealthcare proof of insurance upon UnitedHealthcare's request. Agent must immediately notify UnitedHealthcare in writing if Agent's insurance terminates, is cancelled, suspended, or changes in a material way, including but not limited to a change in the amount of insurance.

**(b) Indemnification.** UnitedHealthcare and Agent will indemnify, hold harmless and defend the other from and against any and all claims, litigations, losses, liabilities, costs, and other expenses incurred as a result of a material breach of the terms of this Agreement. Agent will indemnify and hold harmless UnitedHealthcare (including its directors, officers, attorneys, and employees) from any claims, liability, judgments, damages or costs (including reasonable attorneys' fees) asserted or awarded against or incurred by UnitedHealthcare as a result of any act, error, or omission of Agent.

**2.12 Provision of Materials; Training.** UnitedHealthcare will furnish Agent with materials and training that, in UnitedHealthcare's sole judgment, are necessary for Agent to perform Agent's duties under this Agreement.

**2.13 Federal Crime Control Act.** By signing this Agreement, Agent certifies that Agent has not been convicted of, or pled guilty or no contest, to any criminal felony involving dishonesty or breach of trust and has not been convicted of an offense under Section 1033 of the Violent Crime Control and Law Enforcement Act of 1994. Agent further agrees to notify UnitedHealthcare, in writing, immediately upon receiving notice of any misdemeanor or felony charges or any actions including, but not limited to, convictions by any governmental authority for commission of any act involving fraud, dishonesty, breach of trust, theft, misappropriation of money, or breach of any fiduciary duty.

**2.14 Compliance with Company Rules.** Agent will abide by all applicable UnitedHealthcare policy and procedures and written notices provided to Agent.

### Section 3: Compensation

**3.1 Compensation Payable to Agent.** UnitedHealthcare will compensate Agent for Agent's services during the term of this Agreement in accordance with the terms and conditions set forth in any applicable commission, bonus or other compensation schedule or information (as determined solely by UnitedHealthcare) that may be made available by UnitedHealthcare from time to time. Notwithstanding anything to the contrary contained in this Agreement or any such compensation schedule or information, UnitedHealthcare will not compensate Agent under the terms of this Agreement, except with respect to all Enrolling Units (regardless of the effective date of coverage by UnitedHealthcare) for which (a) Agent is the Agent of Record, (b) Agent continues to service the Enrolling Unit (regardless of whether the writing agent is affiliated with Agent), and (c) UnitedHealthcare determines, in its sole discretion, that it may legally compensate Agent. Notwithstanding anything to the contrary in this Agreement, no compensation will be paid on any Enrolling Unit where the Agent is not receiving base commissions. In addition, UnitedHealthcare will not pay, nor shall Agent accept, any compensation on any Enrolling Unit where the Agent receives compensation directly from the Enrolling Unit or is otherwise acting as a consultant for the Enrolling Unit, unless UnitedHealthcare first receives a written consent, in a form acceptable to UnitedHealthcare, from the Enrolling Unit authorizing UnitedHealthcare to compensate the Agent on such Enrolling Unit; provided, however in no instance will UnitedHealthcare pay, nor shall Agent accept, any compensation on any Enrolling Unit that is a Governmental Entity, where the Agent receives compensation directly from the Governmental Entity or is otherwise acting as a consultant of the Government Entity.

**3.2 Payment.** UnitedHealthcare will compensate Agent monthly; provided, however, that UnitedHealthcare will only compensate Agent with respect to any particular Enrolling Unit within 60 days after UnitedHealthcare receives payment of that Enrolling Unit's monthly contract charges.

**3.3 Commissions on Hold.** UnitedHealthcare may, at its discretion, place compensation of Agent on hold, if based on Agent's information on file with UnitedHealthcare, Agent no longer complies with the terms of this Agreement. Agent agrees to forfeit any compensation placed on hold, if the cause of such hold has not been resolved within six (6) months of the hold's effective date, as indicated on a hold notification letter or commissions statement.

**3.4 Modification or Termination of Compensation.** UnitedHealthcare may terminate or amend any base commission payable to Agent with respect to any Enrolling Unit (regardless of the original effective date of coverage by UnitedHealthcare) at any time by notifying Agent (in a manner consistent with the terms of this Agreement) 30 or more days before the effective date of the termination or amendment.

UnitedHealthcare has the right to exclude any case from eligibility for any and all bonus programs if it determines, at its sole discretion, that including the case in the bonus program would create an actual or perceived conflict of interest for an agent and a customer. UnitedHealthcare has the right to exclude any case from eligibility for any bonus program for any reason.

UnitedHealthcare may terminate or amend any override, bonus or other recognition or reward program applicable to Agent at any time for any reason without prior notice to Agent.

**3.5 Disclosure.** All compensation payable to Agent under this Agreement is subject to disclosure or reporting by UnitedHealthcare to any government or regulatory agency or to any third party, including any customer or prospective customer of UnitedHealthcare.

# Agent/Agency Agreement

UnitedHealthcare will determine, in its sole discretion, the party or parties to which it will disclose any such compensation, the frequency with which it will make any such disclosures, and the amount and type of compensation required to be disclosed. Agent agrees to disclose any compensation that Agent receives under this Agreement as required by applicable law. In addition, Agent shall notify UnitedHealthcare, as outlined in the Notice provision of this Agreement, if Agent receives any compensation directly from an actual or prospective Enrolling Unit that is a Governmental Entity. Such notice shall include the name of such Enrolling Unit, a description of the services provided to such Enrolling Unit, and the amount of compensation received.

3.6 **Adjustments.**

(a) Each party agrees to promptly notify the other upon becoming aware of an incorrect payment amount. Subject to subsections (b) and (c) below, Agent agrees to promptly remit to UnitedHealthcare any amounts overpaid pursuant to this Agreement.

(b) UnitedHealthcare may correct an overpayment error by notifying Agent of the error and asking for repayment. At its sole option, UnitedHealthcare may instead recover overpayments from Agent by offsetting the overpayment against future compensation and notifying Agent of the offset and the reason for it.

(c) UnitedHealthcare will not adjust any incorrect payments to Agent except for payments made within two years prior to the date of adjustment. In this regard, neither Agent nor UnitedHealthcare may assert a claim against the other relating to an incorrect payment amount under the terms of this Agreement unless such claim is made (and the resulting adjustment is commenced) within two years of the date of said incorrect payment.

(d) If UnitedHealthcare incurs any costs in collecting reimbursement of an overpayment from Agent, including but not limited to collection agency and attorney fees but not including the costs of offsetting future payments, Agent will pay UnitedHealthcare's costs, as applicable.

(e) Notwithstanding anything in this Agreement or any compensation schedule to the contrary, UnitedHealthcare will not pay any amount to Agent that exceeds a maximum prescribed by any applicable law.

3.7 **No Compensation to Other Agents.** UnitedHealthcare will not pay compensation to any other agent, broker or producer under the terms of this Agreement. Agent agrees to defend, indemnify and hold harmless UnitedHealthcare if an agent, broker or producer (other than Agent) makes a claim for compensation against UnitedHealthcare under the terms of this Agreement.

3.8 **Taxes.**

(a) **Agent solely responsible for taxes.** Agent acknowledges that Agent is not UnitedHealthcare's employee and that Agent is solely responsible for reporting and paying any tax or other cost assessed on the basis of UnitedHealthcare's payment of compensation to Agent under this Agreement.

(b) **UnitedHealthcare will not withhold for taxes.** Agent acknowledges and agrees that UnitedHealthcare will not withhold any amount of compensation for Agent's taxes, including but not limited to income tax, social security and Medicare tax, workers compensation taxes or costs; unemployment compensation taxes or costs; or any other tax, cost, fee or charge related to Agent's compensation for services under this Agreement.

## Section 4: Agent of Record

4.1 **Designation of Agent of Record.** UnitedHealthcare will consider Agent to be Agent of Record for every Enrolling Unit sold by Agent under the terms of this Agreement unless and until an Enrolling Unit asks UnitedHealthcare to change its Agent of Record to a different agent.

4.2 **Change in Agent of Record.** Notwithstanding the forgoing, UnitedHealthcare may, in good faith, change an Enrolling Unit's Agent of Record at any time for any reason in accordance with applicable law and the following provisions are not intended to limit this right in any way.

(a) **Written request from Enrolling Unit.** In its sole discretion, UnitedHealthcare will recognize a request to change an Agent of Record only if it is in writing and is from the Enrolling Unit, and not from Agent or any other person. If an Enrolling Unit asks UnitedHealthcare to change its Agent of Record, UnitedHealthcare will determine the effective date of the change in its sole discretion.

(b) **Termination Events.** Upon occurrence of at least one of the termination events described in Sections 5.3 through 5.8 of this Agreement, UnitedHealthcare will no longer recognize Agent as any Enrolling Unit's Agent of Record.

## Section 5: Term and Termination

5.1 **Term.** This Agreement is effective from the Effective Date until terminated in accordance with this Section 5.

5.2 **Termination for any Reason.** UnitedHealthcare or Agent may terminate this Agreement at any time, for any reason, by providing written notice of termination to the other party 60 or more days before the effective date of termination.

5.3 **Termination for Loss of License.** If, at any time during the term of this Agreement, Agent does not have, or fails to maintain, a license required to perform services or receive compensation under this Agreement (including if Agent's license is revoked by a licensing or regulatory agency but not including a temporary suspension of Agent's license), it shall be considered a material breach of this Agreement by Agent and this Agreement shall be terminated effective as of the date that Agent first lost, or failed to maintain, the license without regard to when UnitedHealthcare learns of the loss of, or failure to maintain, the license or when UnitedHealthcare notifies Agent that this Agreement has been terminated. UnitedHealthcare may recover any compensation paid to Agent after Agent loses or fails to maintain any such license.

## Agent/Agency Agreement

5.4 **Termination Upon Cessation of Agent's Business.** This Agreement shall terminate automatically upon Agent's death, dissolution, receivership, insolvency, or bankruptcy.

5.5 **Termination for Agent's Breach.** If Agent breaches a material term of this Agreement (including, but not limited to, Sections 2.1(d) (marketing materials), 2.2 (licenses), 2.8 (authority), 2.10 (privacy), 2.11 (insurance)), UnitedHealthcare may terminate this Agreement immediately by notifying Agent in writing of the effective date of termination. The effective date of termination pursuant to this Section 5.5 may be the date of the breach, or any later date that UnitedHealthcare specifies in the notice of termination.

5.6 **Termination for Disciplinary Action.** If a licensing or regulatory agency subjects Agent to any disciplinary sanction (for example, a reprimand or temporary suspension of Agent's license), UnitedHealthcare may terminate the Agreement by providing written notice to Agent effective upon receipt of the notice, or any later date that UnitedHealthcare specifies in the notice. No compensation will be payable to Agent for services rendered during any period in which Agent's license is temporarily suspended. UnitedHealthcare may recover any compensation paid to Agent during any period in which Agent's license is temporarily suspended.

5.7 **Termination for Fraud.** If Agent engages in, or knowingly assists another to commit, fraudulent or dishonest activity in connection with the solicitation, enrollment or renewal of any Enrolling Unit, this Agreement shall terminate effective as of the date on which Agent engaged in or assisted with such activity without regard to when UnitedHealthcare learns of the fraudulent or dishonest activity or when UnitedHealthcare notifies Agent that this Agreement has been terminated. UnitedHealthcare may recover any compensation paid to Agent after Agent engaged in, or knowingly assisted another to commit, the fraudulent or dishonest act without regard to when Agent actually earned such compensation.

5.8 **Termination based on Acquisition or Merger.** UnitedHealthcare may terminate this Agreement in the event that (i) Agent merges with, or is acquired by, a competitor of UnitedHealthcare; or (ii) a competitor of UnitedHealthcare acquires substantially all of the assets of Agent.

(a) **Competitor defined.** A competitor of UnitedHealthcare for purposes of this provision includes any entity (including any such entity's affiliates) that, in the ordinary course of its business, is in direct or indirect competition with UnitedHealthcare.

(b) **Notice.** Agent must provide at least 60 days prior notice to UnitedHealthcare of the closing date of any transaction described in this Section. Upon request, and subject to any applicable confidentiality restrictions or obligations, Agent must provide UnitedHealthcare any and all information about the transaction that Company reasonably requests.

(c) **Procedure.** Upon receipt of such notice from Agent, UnitedHealthcare may terminate this Agreement, in whole or in part, immediately by providing written notice to Agent. If the Agreement is not terminated in its entirety, UnitedHealthcare must specify in its termination notice the portions hereof that shall be terminated in accordance with this Section.

5.9 **Effect of Termination.**

(a) **No solicitation permitted.** Agent may not solicit or sell Benefit Plans to Enrolling Groups after this Agreement has been terminated.

(b) **Compensation.** If this Agreement is terminated pursuant to Section 5.2 above, UnitedHealthcare will continue to pay Agent compensation for Enrolling Units previously enrolled by Agent as long as the Enrolling Unit has an in-force Benefit Plan with UnitedHealthcare, Agent is the Enrolling Unit's Agent of Record and continues to service the Enrolling Unit, and Agent is legally eligible to receive compensation in UnitedHealthcare's sole discretion.

(c) **Material breach.** Upon termination of this Agreement pursuant to Section 5.3 (loss of license), 5.4 (Agent's death or dissolution), 5.5 (material breach), 5.6 (disciplinary action), or 5.7 (fraudulent activity), Agent will no longer be entitled to compensation under this Agreement and UnitedHealthcare shall cease paying such compensation to Agent or any other person under the terms of this Agreement.

5.10 **Termination of Appointment or Authority to Sell.** UnitedHealthcare may terminate Agent's appointment(s) or authority to sell UnitedHealthcare products at any time for any reason without terminating this Agreement in its entirety. UnitedHealthcare may, in its sole discretion, continue to pay Agent compensation under the terms of this Agreement if Agent is legally eligible to receive compensation.

5.11 **Survival.** The following provisions shall survive termination of this Agreement: Sections 2.7; 2.9(b); 2.10; 2.11; 3 and 4 (in their entirety); 5.3, 5.6 and 5.7 (regarding recovery of compensation paid to Agent); 5.9; 6.1; and 7 (in its entirety).

### Section 6: Dispute Resolution

6.1 **Good Faith Negotiation Required.** UnitedHealthcare and Agent agree to work together in good faith to resolve any disputes arising under this Agreement. If after at least ninety (90) days following the date one party sent written notice of the dispute to the other party the dispute is not resolved, any party may pursue resolution of the dispute by other means.

### Section 7: Miscellaneous and Administrative

7.1 **Agreement is Confidential.** Agent agrees not to disclose this Agreement, or any term of it, to any third party without the prior written consent of UnitedHealthcare, except as required by law. This section does not prohibit Agent from disclosing the compensation that Agent receives from UnitedHealthcare to actual or prospective Enrolling Units.

## Agent/Agency Agreement

7.2 **Relationship of the Parties.** Agent is an independent contractor and is not UnitedHealthcare's employee. This Agreement does not create any other relationship between the parties, including joint venture or agency.

7.3 **Compliance with Law.** The parties agree to comply with applicable laws and regulations while performing their obligations under this Agreement, regardless of whether such laws or regulations are specifically referred to in this Agreement. Agent acknowledges that UnitedHealthcare and its affiliates may have government contracts under which UnitedHealthcare must require its contractors to comply with certain laws that would not otherwise apply to it. Agent agrees to comply with these laws.

7.4 **Amendment.** This Agreement, including any Addendums attached hereto, may be amended only as provided in this Section 7.4.

(a) **How UnitedHealthcare may amend.** UnitedHealthcare may amend this Agreement by providing written notice of the amendment and its effective date to Agent 30 or more days before the proposed effective date of such amendment (unless the amendment is a regulatory amendment under (2)(B) of this section).

(1) **Form of notice.** UnitedHealthcare may notify Agent of proposed amendments by correspondence addressed directly to Agent, or by conspicuous notice in a publication (including but not limited to a newsletter or web site) to which Agent has general access.

(2) **Effective date.**

(A) **Non-regulatory amendment.** A proposed amendment will become automatically effective without Agent's written agreement unless Agent notifies UnitedHealthcare that Agent is terminating this Agreement before the effective date of the amendment.

(B) **Regulatory amendment.** If UnitedHealthcare proposes an amendment to bring it or Agent into compliance with an applicable law or regulation (including an interpretation of law by a regulatory agency or court), the amendment is effective immediately upon notice to Agent, or upon any other date specified by UnitedHealthcare in the notice.

(b) **Other amendments.** Any other amendment must be in writing, signed by both parties, and must specify the effective date of the amendment.

7.5 **Assignment.**

(a) **UnitedHealthcare may assign.** UnitedHealthcare may assign all or any of its rights and responsibilities under this Agreement to any entity controlling, controlled by, or under common control with UnitedHealthcare.

(b) **UnitedHealthcare may use administrative service providers.** Agent acknowledges and agrees that persons and entities under contract with UnitedHealthcare may perform certain of UnitedHealthcare's administrative services under this Agreement.

(c) **Agent may assign only with UnitedHealthcare's consent.** Agent may not assign any of its rights, responsibilities or compensation payable under this Agreement to any person or entity without the written consent of UnitedHealthcare.

7.6 **Notices.** The parties agree that any written notice required or permitted by this Agreement (except when UnitedHealthcare provides notice of proposed amendments by publication) is effective if addressed to the other party at the address listed below.

| Notices to UnitedHealthcare: | Notices to Agent: |
|---|---|
| Title: UnitedHealthcare Producer Credentialing | Name on file with UnitedHealthcare at the time of the notice |
| Address: 400 Capital Blvd, FL 2 | Address on file with UnitedHealthcare at the time of the notice |
| City, State ZIP: Rocky Hill, CT 06067-3576 | |
| E-mail: appoint@uhc.com | E-mail on file with UnitedHealthcare at the time of the notice |
| Fax: 860-221-0069 | Fax on file with UnitedHealthcare at the time of the notice |

(a) **Update addresses.** Agent will promptly notify UnitedHealthcare in writing of any change in address. This notice will be deemed to have been properly provided if addressed to the last known address of UnitedHealthcare. For purposes of this Section 7.6, "address" includes an electronic mail ("e-mail") address.

(b) **When notice deemed received.** Notice sent by mail will be deemed to have been received 3 days after mailing by first-class, postage pre-paid United States mail. Notice sent by any other means will be deemed to have been received when actually received by the receiving party. If notice is served by facsimile or e-mail, notice will be presumed to have been received 24 hours after being sent, unless the receiving party rebuts this presumption with contrary proof.

7.7 **Entire Agreement.** This Agreement (including any compensation schedules or Addendums that are attached hereto or incorporated into this Agreement by reference) constitutes the entire agreement between UnitedHealthcare and Agent and supersedes any prior agreement, oral or written, between the parties concerning the subject matter of this Agreement.

7.8 **No Waiver.** This Agreement may be amended or modified, and any of the terms or conditions hereof may be waived, only in the manner set forth above. Any waiver by any party of any condition, or of the breach of any provision or term contained in this Agreement, in any one or more instances, shall not be deemed to be nor construed as a further or continuing waiver of any such condition, or of the breach of any other provision or term of this Agreement.

7.9 **Severability.** If any provision of this Agreement is held invalid for any reason, the validity of the remainder of the Agreement will not be affected.

7.10 **Headings.** Bold-faced headings are intended as reference guides only and are not to be considered part of the Agreement.

## Agent/Agency Agreement

**7.11 Signatory authority.** UnitedHealthcare and Agent each represent and warrant that the person signing this Agreement has the authority to do so and is acting within the scope of his or her authority.

The parties hereby agree on the terms and conditions of this Agreement. In addition, each party hereby certifies that it has not modified, changed or altered, in any way, any provision of this Agreement prior to the execution hereof.

**For UnitedHealthcare:**

Signature – UnitedHealthcare Vice President of Sales

Printed Name

Title

Date

Date

**For Agent or Agency:**

Signature

Printed Name

SSN/TIN

Title

Date

Date

**FOR UNITEDHEALTHCARE INTERNAL USE ONLY:**

**Date Received:** _______/_______/_______

**PCIS Producer ID:** ____________

**Juergen Lottmann**

**From:** Styduhar, Mike [mike_styduhar@uhc.com]
**Sent:** Tuesday, September 21, 2010 3:31 PM
**To:** Juergen Lottmann; Matos, Victoria J
**Subject:** RE: group over 100

Juergen, I hate to tell you this , but I can't release a proposal to you per the new policy below...Another broker beat you to the punch sending in the RFP and all data. See the email below that went out earlier this summer.

**From:** Wedgeworth, Cameron H
**Sent:** Monday, June 28, 2010 11:00 AM
**To:** Wedgeworth, Cameron H
**Cc:** Styduhar, Mike; Norton, John S; Lowrey, Kelli D; Horton, Robert F
**Subject:** United Healthcare Key Accounts (100+ Eligibles) Proposal Release Policy

Dear Arkansas Broker Partners,

I hope everyone is having a good summer and is surviving the heat——hopefully we will get a cooler weather pattern before October.

United Healthcare in Arkansas is making a modification to our proposal release policy for our Key Account sized cases.

Effective today, 6/28/2010, United Healthcare is changing the proposal release policy for Key Accounts cases (100-2,999 eligible employees) for the Arkansas market. United Healthcare will only be releasing a single proposal to Arkansas agents and it will go to the first agent submitting the COMPLETE request. The only exception to this policy will be for those agents who have existing Key Account customers with United Healthcare or who are designated as Gold or Platinum United Advantage agents. These agents will be allowed to receive duplicate proposals. This new policy will apply for both medical and ancillary quotes.
Also, in an effort to protectagents who have placed business with us, a copy of the renewal for existing United Healthcare customers will only be given to the agent of record.

If you have any questions regarding this policy, please give me or Mike Styduhar (501-660-1135) a call.

Thank you for your business and have a greatweek.

Cameron H. Wedgeworth
Director of Sales and Account Management
United Healthcare of Arkansas
1401 W. Capital Avenue, Suite 375
Little Rock, Arkansas 72201

Phone: 501-660-1118
Fax: 501-664-7768

**From:** Juergen Lottmann [mailto:lottmannins@cox.net]
**Sent:** Tuesday, September 21, 2010 10:10 AM
**To:** Matos, Victoria J
**Cc:** Styduhar, Mike
**Subject:** RE: group over 100

EXHIBIT
2

Hello Victoria,
I just faxed you the information on Fellowship Bible Church.
I think that is all the information I could get.

Thanks

Juergen

**From:** Matos, Victoria J [mailto:victoria_j_matos@uhc.com]
**Sent:** Wednesday, September 08, 2010 10:53 AM
**To:** Juergen Lottmann
**Subject:** RE: group over 100

***Victoria Matos*** ; [illegible] ***UnitedHealthcare*** ; [illegible]

**From:** Juergen Lottmann [mailto:lottmannins@cox.net]
**Sent:** Wednesday, September 08, 2010 10:52 AM
**To:** Matos, Victoria J
**Subject:** RE: group over 100

Is there a package savings deal for groups over 100 and if so can you email me the brochure

**From:** Matos, Victoria J [mailto:victoria_j_matos@uhc.com]
**Sent:** Tuesday, September 07, 2010 3:57 PM
**To:** Styduhar, Mike; Juergen Lottmann
**Subject:** RE: group over 100

***Victoria Matos*** [illegible] ***UnitedHealthcare*** [illegible]

**From:** Styduhar, Mike
**Sent:** Tuesday, September 07, 2010 3:34 PM
**To:** Juergen Lottmann
**Cc:** Matos, Victoria J
**Subject:** RE: group over 100

Is that the same church that is here in Little Rock? victoria will get you the info needed to quote..

**From:** Juergen Lottmann [mailto:lottmannins@cox.net]
**Sent:** Tuesday, September 07, 2010 3:32 PM
**To:** Styduhar, Mike
**Subject:** RE: group over 100

Hello Mike,
Fellowship Bible Church, used to be a client of mine, hope to get them back, they are with Blue Cross, hope I can convince them to switch.
The only issue is, they do not renew till 12-1-2010, but they want to start early.

Juergen

**From:** Styduhar, Mike [mailto:mike_styduhar@uhc.com]
**Sent:** Tuesday, September 07, 2010 3:02 PM
**To:** Smith, Katie E
**Cc:** Juergen Lottmann
**Subject:** RE: group over 100

Hi Juergen, Haven't heard from you in a while...What is the name of the group out of curiosity?

I will have Victoria send you a list of the things she needs...This is for a fully insured quote, right?

Thanks,
Mike

**From:** Smith, Katie E
**Sent:** Tuesday, September 07, 2010 11:21 AM
**To:** Styduhar, Mike; Wedgeworth, Cameron H
**Cc:** Juergen Lottmann
**Subject:** FW: group over 100

Mike or Cameron -

Can you follow up with Juergen on what is needed for a group of 100+.

**Katie Smith**
Small Business Sales Account Executive
1-866-432-5992 Ext: 64558
Fax: 1-800-732-9306

We sell stand alone Medical, Dental, Vision, Life as well as Short and Long Term Disability. Ask me about them!

**From:** Juergen Lottmann [mailto:lottmannins@cox.net]
**Sent:** Tuesday, September 07, 2010 11:19 AM
**To:** Smith, Katie E
**Subject:** group over 100

Katie, can you forward me what I need in order to get a quote for a group over 100.

Thanks

Juergen

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

**Lottmann Benefit Group**
38 Merritt Drive
Bella Vista ,AR 72714

Phone Number 479-855-4523
Fax Number 479-855-4863

www.lottmannbenefitgroup.com
lottmannins@cox.net

## Fax Transmittal Form

To: UHC
Name: Victoria Matos
CC:
Phone:
Fax:

From: Juergen Lottmann
Date Sent 9-21-10

Number of Pages:

**Message: Hello Victoria,**
**Attached you will find a quote request for Fellowship Bible Church.**
**Please let me know what additional information you need.**
**They currently have a $3500 ind. out of pocket max and $10,500 for families.**
**Thanks**

**Juergen**

EXHIBIT
3

| Group: Fellowship Bible Church of NWA | Report: Member Critical Data | | | | |
|---|---|---|---|---|---|
| Last Name | First Name | Gender | Date of Birth | Zip Code | UHC Coverage Type |
| Antunano | Edith | F | 5/31/1947 | 72762 | EE |
| ARCHER | Matthew | M | 2/24/1975 | 72762 | F |
| Attebery | David | M | 9/28/1962 | 72758 | ES |
| Austell | Jenni | F | 5/28/1982 | 72758 | ES |
| Autry | James | M | 5/22/1985 | 72703 | ES |
| Barclay | John | M | 5/4/1971 | 72758 | F |
| Baugh | Shelley | F | 10/30/1983 | 72758 | EE |
| Black | Arrin | F | 3/2/1982 | 72712 | EC |
| Blaine | Luke | M | 11/10/1981 | 72758 | EE |
| Broadbooks | David | M | 11/5/1946 | 72756 | EE |
| Campbell | Karen | F | 1/12/1963 | 72712 | DECLINED |
| CAMPBELL | Michael | M | 1/10/1973 | 72714 | EE |
| Carver | Melinda | F | 4/12/1979 | 72758 | EE |
| Ceola | Mark | M | 2/20/1984 | 72719 | F |
| Christensen | Robert | M | 8/15/1964 | 72719 | ES |
| CONSTIEN | Sarah | F | 9/26/1979 | 72762 | ES |
| Cummings | Damon | M | 7/9/1965 | 72736 | DECLINED |
| CUPP | Robert | M | 2/23/1949 | 72758 | ES |
| Daniels | Kimberly | F | 9/4/1980 | 72758 | EC |
| Davies | Elizabeth | F | 6/29/1965 | 72762 | EE |
| Dorch | Dana | F | 10/5/1963 | 72758 | EE |
| Dorch | Russell | M | 7/2/1968 | 72758 | EC |
| Edelen | Nancy | F | 7/18/1963 | 72756 | EE |
| Elam | James | M | 4/23/1970 | 72736 | EE |
| Elam | Linda | F | 1/7/1944 | 72719 | EE |
| Emerson | Marcy | F | 6/24/1968 | 72756 | EE |
| FISK | Kathryn | F | 12/15/1949 | 72758 | EE |
| Flores | Ingrid | F | 10/30/1980 | 72756 | EE |
| Foster | Adriane | F | 9/9/1982 | 72712 | EE |
| Foster | Lynnette | F | 8/11/1953 | 72703 | ES |
| Foster | Simon | M | 4/19/1978 | 72712 | EE |
| FOUGEROUSSE | Traci | F | 2/13/1964 | 72712 | EE |
| Fuller | Sharon | F | 1/24/1945 | 72714 | EE |
| Gardner | Susan | F | 11/11/1955 | 72718 | EE |
| GAY | Pamela | F | 2/27/1953 | 72764 | ES |
| Greenhaw | Thomas | M | 3/13/1982 | 72758 | F |
| GREER | Rebekah | F | 2/1/1983 | 72715 | EC |
| GRIFFIN | Debbie | F | 6/13/1965 | 72712 | E |
| HANNON | Samuel | M | 8/29/1972 | 72762 | F |
| HARRELL | Gary | M | 10/1/1948 | 72701 | ES |
| HASSION | Lori | F | 5/22/1958 | 72714 | EC |
| Heger | Cameron | M | 12/17/1986 | 72758 | E |
| HERRING | Barbara | F | 8/19/1955 | 72762 | DECLINED |
| HOLMSTROM | Carol | F | 12/25/1969 | 72762 | EE |
| Holmstrom | Rodney | M | 3/14/1971 | 72762 | EE |
| HORN | Derek | M | 6/5/1971 | 72712 | F |

| Last Name | First Name | Gender | Date of Birth | Zip Code | Ur... Coverage Type |
|---|---|---|---|---|---|
| Howington | Terri | F | 9/29/1962 | 72758 | DECLINED |
| IKEHARA | Brian | M | 10/3/1950 | 72728 | EE |
| Isbell | Philip | M | 8/23/1963 | 72756 | EE |
| JACKSON | Thomas | M | 3/12/1959 | 72756 | F |
| JENSEN | David | M | 8/29/1954 | 72758 | EE |
| JENSEN | Sara | F | 1/19/1956 | 72758 | EE |
| KENYON | Elizabeth | F | 8/30/1957 | 72712 | F |
| Kleber | Kyle | M | 12/22/1986 | 72751 | EE |
| Komarek | Leonard | M | 2/19/1953 | 72712 | EE |
| Kutko-Harrison | Rachial | F | 9/11/1973 | 72762 | EE |
| LAWSON | Josh | M | 10/6/1982 | 72718 | F |
| Lentz | Rebecca | F | 10/24/1981 | 72704 | EE |
| LITTLE | Terry | M | 5/1/1950 | 72712 | ES |
| Marquette | John | M | 8/3/1962 | 72762 | EE |
| MCLELLAND | Jarrett | M | 6/9/1975 | 72701 | F |
| McSpadden | Glenda | F | 6/8/1967 | 72712 | EE |
| MCSPADDEN | William | M | 1/31/1967 | 72712 | EC |
| MIX | Dwight | M | 2/12/1957 | 72762 | F |
| Morris | Rachel | F | 10/17/1985 | 72704 | EE |
| MULVANEY | MICHAEL | M | 3/19/1949 | 72756 | NOT ELIGIBLE |
| Necessary | Alexia | F | 2/5/1984 | 72712 | EE |
| NEEDHAM | Donna | F | 7/19/1964 | 72719 | F |
| Nelson | Richard | M | 6/26/1950 | 72703 | ES |
| NEWMAN | Matt | M | 4/4/1979 | 72762 | ES |
| NOLEN | Clark | M | 7/7/1971 | 72703 | F |
| NYSTROM | Laura | F | 3/25/1961 | 72712 | EE |
| NYSTROM | William | M | 12/26/1957 | 72712 | EC |
| OLSEN | Karen | F | 3/20/1970 | 72756 | EE |
| OTTAVIANO | Rebecca | F | 4/11/1967 | 72712 | DECLINED |
| PAGE | Scott | M | 5/12/1971 | 72758 | F |
| PARKS | Aaron | M | 12/14/1979 | 72745 | F |
| PINEIRA | Gilbert | M | 5/25/1960 | 72745 | E |
| POPE | Brian | M | 4/15/1973 | 72703 | F |
| PORCHE | Joy | F | 8/24/1969 | 72758 | EC |
| PRICE | Angela | F | 2/24/1976 | 72751 | EE |
| PRIMM | Seth | M | 12/4/1979 | 72745 | F |
| Raines | Douglas | M | 6/19/1963 | 72756 | ES |
| RAPIER | Mickey | M | 6/30/1960 | 72758 | EE |
| RIVERA | Alfredo | M | 4/28/1966 | 72758 | EE |
| ROBINSON | Finley | M | 5/28/1980 | 72703 | F |
| RODGERS | Michael | M | 8/18/1968 | 72758 | EE |
| Roland | Nicholas | M | 3/14/1987 | 72762 | ES |
| Ruiz | Angelberto | M | 2/11/1979 | 72756 | EE |
| RUSCH | Kathy | F | 4/28/1948 | 72714 | NOT ELIGIBLE |
| Rusinowski | Justin | M | 1/15/1986 | 72703 | ES |
| SCHAFER | Abel | M | 7/9/1976 | 72712 | ES |
| SCHATZMAN | Mark | M | 6/13/1964 | 72756 | F |
| Scoggins | Wanda | F | 5/15/1949 | 72758 | EE |
| SHIRLEY | Tom | M | 7/2/1955 | 72715 | EE |

| Last Name | First Name | Gender | Date of Birth | Zip Code | U... Coverage Type |
|---|---|---|---|---|---|
| Sinclair | Thomas | M | 8/3/1942 | 72728 | EE |
| Smith | Jordan | M | 4/15/1984 | 72758 | EE |
| SMITH | Marvin | M | 4/12/1948 | 72762 | ES |
| Smith | Michael | M | 3/23/1971 | 72704 | F |
| STEIGER | Lamar | M | 11/18/1961 | 72712 | F |
| Stockdale | Jan | F | 4/27/1950 | 72714 | ES |
| Stockdale | Michael | M | 11/23/1981 | 72756 | EE |
| Thoeny | Wendy | F | 2/10/1976 | 72756 | EE |
| THOMAS | Susan | F | 11/11/1962 | 72756 | EE |
| Tucker | Chris | M | 11/18/1975 | 72704 | F |
| TURNER | David | M | 4/23/1964 | 72745 | EC |
| TURNER | Starla | F | 7/28/1959 | 72745 | EE |
| Varnadoe | Adrienne | F | 1/9/1984 | 72712 | EE |
| WATERHOUSE | Dianne | F | 1/16/1979 | 72714 | EC |
| WHITE | Jeffrey | M | 1/15/1968 | 72719 | EE |
| Williams | Jessica | F | 3/12/1984 | 72762 | EE |
| Wood | Steven | M | 2/2/1960 | 72758 | F |
| Wright | Corey | M | 10/15/1970 | 72745 | EE |
| Yates | Robyn | F | 10/29/1962 | 72756 | EE |
| Yount | Michelle | F | 7/23/1984 | 72704 | EE |
| | | | | | |
| | | | | | |
| Department abbreviations: | | | | | |
| EC = Early Childhood | | | | | |
| CR =Celebrate Recovery | | | | | |
| B&G = Buildings & Grounds | | | | | |
| Admin = Administration | | | | | |

**UnitedHealthc[illegible] Proposal Request Information for G[illegible]ps 51-999**

**Email completed form to Victoria_Matos@uhc.com or fax to 1.[illegible]00.847.9633**

| | |
|---|---|
| **Broker** | J. LOTTMANN |
| **Agency** | LOTTMANN INSURANCE |
| **Prospect Name** | FELLOWSHIP BIBLE CHURCH |
| **Address** | |
| **City/State** | |
| **Zip Code** | |
| **Tax ID #** | |
| **SIC** | 8661 |
| **Eff Date** | 1-1-11 |
| **Prospect's Renewal Date** | 1-1-11 |
| **Are you the inforce broker?** | NO |

(Medical) (Life) (Dental) (Vision) Dep Life Supp Life LTD STD

| | |
|---|---|
| **# of Eligible Employees** | |
| **# of Participating Employees** | |

| **Employer Contribution** | **Emp** | **Deps** |
|---|---|---|
| Medical | 100 % | 0 % |
| Life | 100 % | 0 % |
| Dental | 100 % | 0 % |
| Vision | 100 % | 0 % |

| **Commission** | | |
|---|---|---|
| **Due** | Medical | % |
| | Life | % |
| | Dental | % |
| | Vision | % |
| **Participation** | | |

| **Carrier History (3 years)** | | | |
|---|---|---|---|
| Medical | BCBS | # of years | 4 |
| Prior | | # of years | |
| Life | | # of years | |
| Dental | GUARDIAN | # of years | 1 |
| Vision | | # of years | |

| **Current Rates** | ~~232.89~~ | | | |
|---|---|---|---|---|
| EE | 232.85 | | | |
| ES | 482.70 | | | |
| EC | 385.37 | | | |
| EF | 635.20 | | | |

| | **Life & DI** |
|---|---|
| Life/AD&D | |
| Dep Life | |
| Supp Life | |
| STD/LTD | |

**12 months of claims data and an electronic Excel census with DOBs, Gender, Zip Codes & Coverage Types is required.**

| | |
|---|---|
| **Cobra Participants #** | |
| **Pre 65 Retirees #** | |
| **65+ Retirees #** | |

| **Current Funding** | | |
|---|---|---|
| | X | Fully Insured |
| | | Self Insured |

Self Insured Claim Basis (12/12, 12/18, ....)
Self Insured Aggregate Level (125%, .....)
Self Insured Spec Level ($50,000, $75,000,..)

| | **Current Medical Benefits** | | |
|---|---|---|---|
| Network (In/Out) | SEE ATTACHED SHEET | | |
| Product | | | |
| Office Copay | | | |
| Deductible | | | |
| Coinsurance | | | |
| OOP Max | | | |
| Rx Copay | | | |
| Lifetime Max | | | |
| In-Patient Copay | | | |
| Out-Patient Copay | | | |

| | **Current Life / Disability Benefits** |
|---|---|
| Basic Life | 25,000 |

**Current Dental / Vision Benefits**

100/80/50/50 or 100/80/50/0
$25 $50 $75
$1000 $1250 $1500
$1000 $1250 $1500

100/80/50/50 or 100/80/50/0
$25 $50 $75
$1000 $1250 $1500
$1000 $1250 $1500

$10/10 $10/25 $15/30
12/12/12 12/12/24

| | |
|---|---|
| Dep Life | |
| Supp Life | |
| STD/LTD | |

$10/10 $10/25 $15/30
12/12/12 12/12/24

# Insured Employer Application

UnitedHealthcare
A UnitedHealth Group Company

To avoid processing delays, please make sure you:

1. Answer all questions completely and accurately.
2. DO NOT CANCEL YOUR EXISTING COVERAGE UNTIL YOU RECEIVE WRITTEN NOTIFICATION OF APPROVAL.
3. Include a deposit check in the amount of the estimated first month's premium; such amount will be returned in the event coverage does not become effective and will be applied against the first month's premium if coverage does become effective.

Requested Effective Date 1-1-11

## General Information

Group's/Company's Legal Name: FELLOWSHIP BIBLE CHURCH

Street Address: 1051 PLEASANT GROVE RD | Tax ID: 71-0605274

City: ROGERS | State: AR | Zip Code: 72745 | County: BENTON

Contact Person: William Nystrom | Telephone: 479-659-8884 | Fax: 479-659-3648 | Email Address: BiNystrom@fellowshipNWA.c

Billing Address (if different)

Multi-location group/company? ☐ Yes ☒ No | # of Locations: 1 | Address (es) (or list on additional sheet of paper)

# of Years in Business: 26 | Nature of Business: Church | Industry Code: 8661

# Hours per week to be eligible: 30

Waiting Period for new hires:
- ☒ 1st of Policy Month following Date of Hire
- ☐ 1st of Policy Month following ___ [months] [days] of employment
- ☐ Date of Hire (no waiting period)
- ☐ ___ [months] [days] of employment following Date of Hire
- ☐ Other ___

Waiting Period waived for initial enrollees ☒ Yes ☐ No

Number of Persons currently on COBRA/Continuation: (employees/dependents)

Number of Employees Termed in last 12 Months

Classes Excluded: ☒ None ☐ Union ☐ Hourly ☐ Non-Management ☐ Non-Owners

| Participation | | # Applying for: | | # Waiving for: | | Contribution | Employer % | Employee% | Employer % for Dep |
|---|---|---|---|---|---|---|---|---|---|
| # Full Time Employees | 113 | Medical | 113 | Medical | 0 | Medical | 100 | 0 | 0 |
| # Part Time Employees | 229 | Life | 113 | Life | 0 | Life | 100 | 0 | 0 |
| # Ineligible Employees | | Dental | 113 | Dental | 0 | Dental | 100 | 0 | 0 |
| Total # Employees | 342 | Vision | 113 | Vision | 0 | Vision | 100 | 0 | 0 |
| | | Other | | Other | | Other | | | |

Name of Current Medical Carrier: BCBS | # Yrs with the Current Carrier: 4 | Name of Current Dental Carrier: GUARDIAN | # Yrs with the Current Carrier: 1

Name of Worker's Comp Carrier: Church Mutual | Names of Owners/Partners not covered by Workers Compensation: N/A

☐ Yes ☒ No — In the past 36 months, has the Group/Company or any affiliated entity filed for protection or operated under federal/state bankruptcy laws? (Chapter 7 or 11)

☐ Yes ☒ No — In the past 36 months, has any creditor filed or threatened to file a petition requesting the Group/Company or any affiliated entity be placed voluntarily into bankruptcy?

Coverage provided by "UnitedHealthcare and Affiliates":
Medical coverage provided by United HealthCare Insurance Company or United HealthCare of Arkansas, Inc.
Dental coverage provided by United HealthCare Insurance Company or Unimerica Insurance Company
Life insurance coverage provided by United HealthCare Insurance Company or Unimerica Insurance Company
Vision coverage provided by United HealthCare Insurance Company or Unimerica Insurance Company

## Broker Information

| Broker Name | Agency | Agent Code/Tax ID Number |
|---|---|---|
| JUERGEN LOTTMANN | LOTTMANN INS. | |

| Signature | Email Address | Social Security # | Phone Number | Date |
|---|---|---|---|---|
| [signature] | LOTTMANNINS@[illegible].NET | 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 | 479-850-4523 | 9-20-10 |

| Rep Name | Rep # |
|---|---|
| | |

| Commissions payable to | Broker Commission Schedule ______ Std Scale of ______ % |
|---|---|
| | |

*See next page for important disclosure regarding producer compensation.

## Disclosures

**Answer the following questions to the best of your knowledge for all eligible employees and dependents (proprietors, partners, corporate officers, employees, spouses and dependent children). Please provide details to "Yes" answers in the space provided.**

**IMPORTANT: Your answers to these questions must include all COBRA and State Continued individuals covered by your present plan.**

- [x] Yes [ ] No — 1. Within the past 5 years, has an employee or dependent filed a claim for short-term disability, long term disability, social security disability income, workers' compensation, Medicare, or Medicaid benefits or any other type of disability benefits on any policy?
- [ ] Yes [x] No — 2. During the past 5 years, has any employee or dependent had life, disability or health insurance declined, postponed, changed, cancelled or withdrawn?
- [ ] Yes [x] No — 3. Except for a maternity or paternity leave, within the past 5 years, has any employee applied for a family or medical leave of more than 2 weeks due to injury, disability or illness of the employee or dependent?
- [x] Yes [ ] No — 4. Within the past 5 years, has any employee been absent from work for more than 2 consecutive weeks due to injury, disability or illness
- [x] Yes [ ] No — 5. Except for a mental health admission, during the past 5 years, has any employee or dependent had a hospital stay lasting more than 5 days?
- [ ] Yes [x] No ? — 6. Is any employee or dependent currently hospitalized?
- [x] Yes [ ] No — 7. Except for allergy-related, birth-control or infertility medication, during the past 5 years, has any employee or dependent taken a prescription medication for a period lasting more than 6 months.
- [x] Yes [ ] No — 8. Is any employee or dependent currently taking a prescription medication that will be taken for more than 6 months?
- [x] Yes [ ] No — 9. During the past 5 years, has any employee or dependent been treated for OR diagnosed by a physician as having one of the following conditions:

- [x] Cancer (any type)
- [ ] Lung disease or respiratory problem (any type)
- [x] Heart disease or disorder (any type)
- [ ] Organ, tissue or cell transplant
- [ ] Liver disease (any type)
- [ ] Kidney disease (any type)
- [ ] Pancreatic disorder (any type)
- [x] Diabetes
- [ ] Hepatitis
- [ ] Morbid obesity
- [ ] Congenital abnormality
- [ ] Vascular disease (any type)
- [x] Neurological disorder (any type)
- [x] Immunological disorder (reportable types)
- [ ] Alcohol or drug addiction or abuse

**If you have answered "Yes" to any of the questions above, please provide the requested information for each individual. If necessary, use additional sheets of paper.**

| Question Number | Check One: Employee | Check One: Dependent | Age | Date of Recovery | Date of Treatment/ Condition | Nature of Medication | Name of Condition | $ Amount of Claims | Prognosis Current Treatment |
|---|---|---|---|---|---|---|---|---|---|
| We | Know | | of | | of | these | issues | | but |
| Not | Specifics | | | | | Due | to | Hippa | Laws |
| | | | | | | | | | |
| We | will | | | attach | | 2 yr | claims | | History |
| | | | | | | | | | |
| | | | | | | | | | |

Lottmann Benefit Group
38 Merritt Drive
Bella Vista, AR 72714

September 22, 2010

To Whom It May Concern:

Fellowship Bible Church requests that Juergen Lottmann be the Agent of Record for the quote request submitted to United Health Care. Please forward all communications to Mr. Lottmann.

Sincerely,

Bill Nystrom, CFO
Fellowship Bible Church

EXHIBIT
4

UnitedHealthcare®
A UnitedHealth Group Company

1401 West Capitol Avenue Suite 375 Little Rock AR 72201
Tel 501 664 7700 Fax 501 664 7768

September 30, 2010

Mr. Juergen Lottmann
38 Merritt Drive
Bella Vista, AR 72714-4807

RE: Notice of Agent / Agency Agreement Termination
Effective December 15, 2010
Producer ID: 149162

Dear Mr. Lottmann:

In accordance with Section 5.2 of the Agent / Agency Agreement between UnitedHealthcare and Lottmann Insurance, as well as between UnitedHealthcare and Juergen Lottmann (collectively, the "Agreements"), you are hereby notified that we are terminating the Agreements. This termination is effective on December 15, 2010 for all medical and ancillary lines of business covered by such Agreements. You are also hereby notified that, as provided for in Section 5.10 of the Agreements, we are terminating your appointments with UnitedHealthcare Insurance Company and your authority to sell UnitedHealthcare Insurance Company products effective immediately.

You will not be able to solicit or sell new Benefit Plans following termination (please see section 5.9(a) of the Agreements). You will continue to receive compensation for existing cases if you are eligible to continue to receive compensation pursuant to Section 5.9(b) of the agreement, subject to your eligibility and the conditions in the surviving elements of the Agreement (see Section 5.11).

Sincerely,

Cameron H. Wedgeworth
Director of Sales and Account Management

EXHIBIT
5

Lottman 135553 e-5.txt

From: documents@lislerutledge.com
Sent: Thursday, October 21, 2010 2:30 PM
To: Andrea King-West
Subject: FW: Medical

-----Original Message-----
From: Juergen Lottmann [mailto:lottmannins@cox.net]
Sent: Thursday, October 21, 2010 10:39 AM
To: documents@lislerutledge.com
Subject: FW: Medical

Case Number 135553

Chris,
Here is the reply from Katie at UHC.

Thanks

Juergen

-----Original Message-----
From: Smith, Katie E [mailto:katie_e_smith@uhc.com]
Sent: Thursday, October 21, 2010 10:31 AM
To: Juergen Lottmann
Subject: RE: Medical

Juergen -

Your individual appointed was terminated right away which was Oct 4th. However, we were allowing you to finish any groups that were still outstanding for the month of October. Your agency license has to be given a 60 day notice if there was in fact any other agents that worked at your agency to finalize there groups. That is why you got two notices.

Let me know if you have any questions.

Katie Smith
Small Business Sales Account Executive
1-866-432-5992 Ext: 64558
Fax: 1-800-732-9306

We sell stand alone Medical, Dental, Vision, Life as well as Short and Long Term Disability. Ask me about them!

-----Original Message-----
From: Juergen Lottmann [mailto:lottmannins@cox.net]
Sent: Thursday, October 21, 2010 9:37 AM
To: Smith, Katie E
Subject: RE: Medical

Hello Katie,
I am really confused. I submitted the case for Christian Life Cathedral on September 16th, at least that was the date we started with the application process , than UHC sent me a letter that I am terminated as of December 15th, that means to me that I can place the business and be the agent of record even if they place the business with an effective date of November 15th or even December 1st.
Then I receive a letter that I am terminated as of October 4th, this just does make any sense to me.
Can you clarify this for me.



EXHIBIT
6

Thanks

Juergen Lottmann

-----Original Message-----
From: Smith, Katie E [mailto:katie_e_smith@uhc.com]
Sent: Wednesday, October 20, 2010 1:32 PM
To: Juergen Lottmann
Subject: RE: Medical

Juergen -

That is correct if Christian Life Cathedral decides to move there coverage to a November effective date we won't be able to place the group coverage through you with UnitedHealthcare. Your appointment has been terminated to sell any new small business with UHC.

Katie Smith
Small Business Sales Account Executive
1-866-432-5992 Ext: 64558
Fax: 1-800-732-9306

-----Original Message-----
From: Juergen Lottmann [mailto:lottmannins@cox.net]
Sent: Wednesday, October 20, 2010 12:57 PM
To: Smith, Katie E
Subject: RE: Medical

Katie,

Can you sent me an email stating that can you can't not place Christian Life Cathedral because of my termination date in October

Thanks

Juergen

-----Original Message-----
From: Smith, Katie E [mailto:katie_e_smith@uhc.com]
Sent: Wednesday, October 20, 2010 12:41 PM
To: Juergen Lottmann
Subject: RE: Medical

Sorry, there isn't anything I can do about that.

Katie Smith
Small Business Sales Account Executive
1-866-432-5992 Ext: 64558
Fax: 1-800-732-9306

We sell stand alone Medical, Dental, Vision, Life as well as Short and Long Term Disability. Ask me about them!

-----Original Message-----
From: Juergen Lottmann [mailto:lottmannins@cox.net]
Sent: Wednesday, October 20, 2010 12:40 PM
To: Smith, Katie E
Subject: RE: Medical

Then I need to move them to Qual Choice if I can't get a November effective date.

-----Original Message-----
From: Smith, Katie E [mailto:katie_e_smith@uhc.com]
Sent: Wednesday, October 20, 2010 12:36 PM
To: Juergen Lottmann
Subject: RE: Medical

Juergen -

This will cause a problem because your termination is already set. We need to keep all groups with the effective dates in Oct.

Katie Smith
Small Business Sales Account Executive
1-866-432-5992 Ext: 64558
Fax: 1-800-732-9306

We sell stand alone Medical, Dental, Vision, Life as well as Short and Long Term Disability. Ask me about them!

-----Original Message-----
From: Juergen Lottmann [mailto:lottmannins@cox.net]
Sent: Wednesday, October 20, 2010 12:34 PM
To: Smith, Katie E
Subject: FW: Medical

Here is the reply from Christian Life Cathedral

-----Original Message-----
From: nathaniel.sweeney@gmail.com [mailto:nathaniel.sweeney@gmail.com]
On Behalf Of Nate Sweeney
Sent: Wednesday, October 20, 2010 10:34 AM
To: Juergen Lottmann
Subject: Medical

Hey Juergen,

The meeting went good last night. They put the vote off until the next meeting on November 9th. They liked the numbers and coverage but want to align them with the overall yearly budget. Ill think well be good to go next month.

Thanks

--
Nate Sweeney

Christian Life Cathedral
Bentonville Arkansas
Knowing Christ and Making Him Known
http://www.clcbentonville.com/

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you

have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

CERTIFIED

CERTIFIED MAIL

7010 1670 0000 4574 8154

UNITED STATES POSTAGE
PITNEY BOWES
02 1P $ 007.00[0]
0003835584 NOV 24 2010
MAILED FROM ZIP CODE 72764

Return Receipt Requested

Return Receipt Requested

LISLE | RUTLEDGE
ATTORNEYS

1458 Plaza Place
Springdale, AR 72764

UnitedHealthcare Insurance Company
% The Corporation Company
Registered Agent
124 West Capitol Avenue Suite 1900
Little Rock, AR 72701

CT Corporation

**Service of Process Transmittal**
11/29/2010
CT Log Number 517661588

**TO:** Rebecca Thompson
UnitedHealth Group Incorporated (111504190770700600)
9900 Bren Road East, MN008-T700
Minnetonka, MN 55343

**RE:** **Process Served in Arkansas**

**FOR:** UnitedHealthcare Insurance Company (301800099745000000048) (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Juergen Lottmann, Pltf. vs. UnitedHealthcare, Inc. and UnitedHealthcare Insurance Company, Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Benton County Circuit Court, AR<br>Case # CIV 2010-3480-2 |
| **NATURE OF ACTION:** | Pertaining to claim for health insurance coverage |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Little Rock, AR |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 11/29/2010 postmarked on 11/24/2010 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date of service |
| **ATTORNEY(S) / SENDER(S):** | Chris Lisle<br>Lisle Rutledge, PA<br>1458 Plaza Place<br>Springdale, AR 72764<br>479.750.4444 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/29/2010, Expected Purge Date: 12/29/2010<br>Image SOP<br>Email Notification, Administrative Assistant legalmail@uhc.com |
| **SIGNED:** | CT Corporation System |
| **PER:** | Amy McLaren |
| **ADDRESS:** | 124 West Capitol Avenue<br>Suite 1900<br>Little Rock, AR 72201-3736 |
| **TELEPHONE:** | 800-592-9023 |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. [illegible] certified mail receipts confirm receipt of pa[illegible] contents.

EXHIBIT
tabbles
A

LISLE | RUTLEDGE
ATTORNEYS

John Lisle *(of counsel)*
Chris Lisle
Donnie Rutledge
Stephen Lisle

1458 Plaza Place
Springdale, AR 72764
P 479.750.4444
F 479.751.6792
www.lislerutledge.com

James K. Hatcher
Gino Franco
Mona J. Teague

November 24, 2010

**CERTIFIED MAIL**
**Return Receipt Requested**
**70010 1670 0000 4574 8154**

UnitedHealthcare Insurance Company
% The Corporation Company
Registered Agent
124 West Capitol Avenue Suite 1900
Little Rock, AR 72701

RE: Juergen Lottmann v. UnitedHealthcare, Inc. and UnitedHealthcare Insurance Company
Benton County, AR CIV 2010-3480-2

Dear Agent:

We enclose herewith a Summons and Complaint which have been filed against you in connection with the above-identified matter in the Circuit Court of Benton County, Arkansas.

You have thirty days from the date you receive these documents to file a responsive pleading with the Court. If you do not file a response within the time allowed, a default judgment may be entered against you.

Sincerely,

Jean Pinkston

Jean Pinkston
Legal Assistant

Enclosures

# SUMMONS

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

CASE NUMBER: CIV 2010-3480-2

PLAINTIFF: JUERGEN LOTTMANN

vs.

DEFENDANT: UNITEDHEALTHCARE, INC. and UNITED HEALTHCARE INSURANCE COMPANY

PLAINTIFF'S ATTORNEY: Chris Lisle
ADDRESS: Lisle Rutledge P.A., 1458 Plaza Place, Suite 101, Springdale, AR 72764-5273

THE STATE OF ARKANSAS TO DEFENDANT: UnitedHeathcare Insurance Company
ADDRESS: % The Corporation Company, Registered Agent, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201

## NOTICE

1. You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

2. The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

A. It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

B. It must be filed in the court clerk's office within thirty (30) days from the day you were served with this summons.

3. If you desire to be represented by an attorney, you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. ADDITIONAL NOTICES:

WITNESS MY HAND AND SEAL OF THE COURT THIS THE 22 DAY OF Nov, 2010.

Brenda DeShields
BRENDA DeSHIELDS, CIRCUIT CLERK
BENTON COUNTY CIRCUIT COURT
102 N. E. "A" STREET
BENTONVILLE, AR 72712

[signature]
DEPUTY CLERK

STATE OF ARKANSAS
COUNTY OF WASHINGTON

ON THIS ____ DAY OF __________, 2010, I HAVE DULY SERVED THE WITHIN WRIT, BY DELIVERING A COPY AND STATING THE SUBSTANCE THEREOF, TO THE WITHIN NAMED ____________.

SERVICE COSTS: ____________

By: ________________________

Title: ______________________